IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| TAWHON EASTERLY, | ) | CASE NO.   4:06 CV 00186 |
| | ) | |
| Plaintiff, | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. BUDD, et al., | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |


This matter is before the Court upon Defendants' Motion to Dismiss Plaintiff's

Amended Complaint.  See (Dkt. # 10).   The defendants advance the motion pursuant to

Federal Rule of Civil Procedure 12(b)(6) alleging that the applicable statutes of limitations

require a dismissal of the above-captioned action.

## I.      STANDARD OF REVIEW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests whether the

plaintiff has pleaded a cognizable claim.  See Scheid v. Fanny Farmer Candy Shops, Inc.,

859 F.2d 434, 436 (6th Cir. 1988).  "A complaint should not be dismissed for failure to state

a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support

of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46

(1957); see Neitzke v. Williams, 490 U.S. 319, 326-27; Lewis v. ACB Bus. Serv., Inc., 135 F.3d 389, 405 (6th Cir. 1997); Ang v. Proctor & Gamble Co., 932 F.2d 540, 544 (6th Cir. 1991). Courts must construe the facts alleged "in light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." Ziegler v. IBP Hog Mkt., Inc., 249 F.3d 509, 512 (6th Cir. 2001); see Ang, 932 F.2d at 544. While the court must accept the plaintiff's factual allegations as true, "[t]he trial court need not accept as true [a plaintiff's] legal conclusions."  Lewis, 135 F.3d at 405.

## II.    BACKGROUND

The facts, as alleged in Plaintiff's complaint, are as follows.  On December 28, 2001, Mahoning County Sheriff's Department ("MCSD") Deputy Christine Kachaylo ("Kachaylo") identified the Plaintiff, Tawhon Easterly ("Easterly"), as the inmate who struck her while she attempted to quell a disturbance at the Mahoning County Jail.  See (Dkt. # 8, ("Am. Compl.") ¶ 15).  Upon orders issued by MCSD Corporal Ronald Denson ("Denson"), MCSD Deputies Raymond Hull ("Hull"), Mark Dixon ("Dixon"), and Ryan Strange ("Strange") thereafter transported the Plaintiff to an isolated location in the jail.  See (Am. Compl. ¶¶ 16-17).  Hull, Dixon and Strange then utilized force against the Plaintiff's person.  See (Am. Compl. ¶¶ 18-20).  Denson and Kachaylo observed the deputies' use of force against the Plaintiff.  See (Am. Compl. ¶¶ 18, 20-21).

No employee of the MCSD filed a Use of Force Report as required by MCSD policy.  See (Am. Compl. ¶ 23).  Other documents filed by Denson, Hull, Dixon, Strange, and

Kachaylo indicated that the Plaintiff had resisted lawful commands.  <u>See</u> (Am. Compl. ¶ 24).

MCSD Major Michael J. Budd ("Budd") subsequently directed MCSD Sergeant William Deluca ("Deluca") to "put [Plaintiff] in hospital" as punishment for striking Kachaylo.  <u>See</u> (Am. Compl. ¶ 25).  Deluca instructed Hull, Dixon, MCSD Deputy Ronald Kaschak ("Kaschak") and MCSD Deputy John Rivera ("Rivera") to "take care of [the Plaintiff]."  <u>See</u> (Am. Compl. ¶ 26). These deputies again took the Plaintiff to an isolated area of the Mahoning County jail and utilized force against his person.  <u>See</u> (Am. Compl. ¶¶ 27-28).  Hull and Rivera thereafter dragged the Plaintiff naked to an isolation cell.  <u>See</u> (Am. Compl. ¶ 30).  Deluca ordered the deputies to refrain from filing Use of Force Reports.[1]  <u>See</u> (Am. Compl. ¶ 30).

The Plaintiff filed a grievance in January 2002 arising from the use of force "but was frustrated in his efforts by the failure of the [MCSD] to afford [him] meaningful review and access to information and witnesses."  (Am. Compl. ¶ 79.)  On March 23, 2002, the Plaintiff became a prisoner in the custody of the Ohio Department of Corrections.  <u>See</u> (Am. Compl. ¶ 80).

In September 2002, Mahoning County Sheriff Randall Wellington ("Wellington") learned that Deputy Kaschak made a disclosure in an employment application regarding the use of force inflicted upon the Plaintiff.  <u>See</u> (Am. Compl. ¶ 34).  Consequently, Wellington assigned Budd to investigate Kaschak's disclosure.  <u>See</u> (Am. Compl. ¶ 35).  Budd thereafter

---

[1]The Amended Complaint alleges that Denson, Hall, Strange and Kachaylo falsified reports following this second incident.  <u>See</u> (Am. Compl. ¶ 33). There lacks any indication that Denson and Kachaylo were involved in the second incident.  As discussed *infra*, this appears to one of many pleading errors present in the Amended Complaint.

directed Kaschak to make a false statement regarding the use of force.  <u>See</u> (Am. Compl. ¶ 37).  Wellington and Budd then destroyed the letter advising of Kaschak's disclosure.  <u>See</u> (Am. Compl. ¶ 39).

Wellington subsequently learned that Kachaylo had been contacted by the Federal Bureau of Investigation ("FBI") during an investigation of the use of force utilized against the Plaintiff.  <u>See</u> (Am. Compl. ¶ 40).  Wellington instructed Kachaylo to issue a report therein indicating that she had been harassed by the FBI.  <u>See</u> (Am. Compl. ¶ 40).

On April 6, 2004, the United States Attorney's Office for the Northern District of Ohio filed an Information against Kaschak charging violations of 18 U.S.C. §§ 242, 2 arising from his use of force against an unnamed pre-trial detainee housed in the Mahoning County Jail.  <u>See</u> (Am. Compl. ¶ 48); <u>United States v. Ronald Kaschak</u>, 4:04CR167 (N.D. Ohio).  On April 26, 2006, Kaschak entered into a plea agreement whereby he stipulated to the following facts:

> 1.  On or about December 28, 2001, the defendant, Ronald Kaschak ("Kaschak"), was a Deputy Sheriff assigned to work at the Mahoning County Jail in Youngstown, Ohio, in the Northern District of Ohio. Kaschak was on duty and acting in his official capacity when he heard a call indicating that a fight had broken out in the jail.  In the course of the fight another deputy was struck by an inmate.  The deputy later identified the inmate who had struck her.  The inmate was then taken out of his cell and into another area where deputies other than the defendant Kaschak intentionally used excessive force on the inmate to punish him.  Kaschak was not involved in this portion of the incident.

> 2.  Later, Kaschak was given direction from senior management in the Sheriff's Department and his supervisors that they wanted the same inmate to be put in the hospital as further punishment.  As a result, Kaschak and other deputies agreed to willfully use unnecessary force on the inmate in order to punish him.  The deputies, including Kaschak

and at least three others, took the inmate to a secluded area of the jail. He did not resist their actions in any way.

3.      Once in the isolated area, defendant Kaschak, acting in concert with three other detention officers, intentionally used excessive and unreasonable force against the inmate, causing bodily injury to the inmate by beating him.  Although Kaschak did not strike as many blows as other deputies present, he did hold the inmate down and deliver several blows to the inmate's lower body which were unnecessary to perform any legitimate law enforcement objective.  At no time during this incident did the inmate resist in any way or pose any threat to the deputies who used physical force against him.

4.      After the second beating was over, other deputies dragged the inmate, stripped naked, through the disciplinary unit to his cell.

United States v. Ronald Kaschak, 4:04CR167 (N.D. Ohio) (Dkt. # 11); see (Am. Compl. ¶ 49).[2]  Kaschak was sentenced on November 3, 2005 to *inter alia* two years probation.  United States v. Ronald Kaschak, 4:04CR167 (N.D. Ohio) (Dkt. # 16).

On July 14, 2004, the Grand Jury for the United States District Court for the Northern District of Ohio issued an Indictment against Defendants Hull, Dixon, Rivera, Strange, Denson, and Deluca charging a conspiracy to violate and violations of the Plaintiff's civil rights.  See United States v. Raymond Hull,et al., 4:04CR381 (N.D. Ohio).  Deluca entered into a plea agreement on August 20, 2004  whereby he admitted to receiving an order from a person in "senior management" to "put [the Plaintiff] in the hospital."  See (Am. Compl. ¶ 56); United States v. Raymond Hull,et al., 4:04CR381 (N.D. Ohio) (Dkt. # 57).  On October 8, 2004, Denson entered into a plea agreement whereby he admitted to the following

---

[2]The Court provides the relevant facts from the criminal proceedings exclusively as a means of background information.  The Court does not rest any legal determination on these facts.

factual basis:

    1.    On or about December 28, 2001, the defendant, Ronald Denson ("Denson"), was a Corporal assigned to work at the Mahoning County Jail in Youngstown, Ohio, in the Northern District of Ohio. Denson was on duty and acting in his official capacity as a supervisor when he heard radio traffic that a fight had broken out in the jail. In the course of the fight another deputy was struck by an inmate. The fight was broken up and the inmates were returned to their cells.

    2.    Denson and other deputies present on the pod agreed that the inmate in question, Tawhon Easterly, should be taken into the gym area and roughed up by the guards in order to punish him for hitting the female guard. Deputies took Easterly into the gym and he was accused of hitting the female. When Easterly talked back, three deputies who were under Denson's supervision took him to the ground and beat him, intentionally using unnecessary and excessive force on his person resulting in minor injury to him. Denson stood and watched these deputies under his supervision using excessive force, doing nothing to intervene, though he knew he should have.

    3.    Later the same shift, Corporal Denson was given direction from a person in senior management in the Sheriff's Department that he wanted the same inmate to be put in the "hospital" as punishment for striking a guard and his clothes taken. The official giving this direction was adamant and forceful about putting the inmate in the hospital for what had occurred. Denson passed this information on and another supervisor who had received similar direction passed on such direction from senior management to several deputies who were on duty at the time. Denson understood when he did this that he was passing on a direction from senior management to willfully use unnecessary force on the inmate in order to punish him. The deputies carried out this direction by beating the inmate, resulting in bodily injury.

United States v. Raymond Hull, et al., 4:04CR381 (N.D. Ohio) (Dkt. # 64). Following the

issuance of a Superceding Indictment, Hull, Rivera, Strange and Dixon entered into separate

plea agreements with the Government whereby they admitted to their roles in utilizing

excessive force upon the Plaintiff at "the direction of senior management." United States v.

Raymond Hull, et al., 4:04CR381 (N.D. Ohio) (Dkt. # 113; Dkt. # 115; Dkt. # 177; Dkt. # 122).

On October 8, 2004, the Grand Jury issued an Indictment charging Budd with conspiracy and violations of several pretrial detainees' civil rights, including those of the Plaintiff. See (Am. Compl. ¶ 58); United States v. Michael J. Budd, 4:04CR508 (N.D. Ohio). Trial commenced in the matter on February 14, 2005. The jury reached a verdict of guilty on Count I – conspiring to obstruct justice – on March 1, 2005. See United States v. Michael J. Budd, 4:04CR508 (N.D. Ohio) (Dkt. # 79). The jury was unable to reach a verdict on the remaining civil rights violations.

The Court commenced a second trial on April 5, 2005. The jury reached a verdict of guilty on all remaining civil right violations on April 14, 2005. See United States v. Michael J. Budd, 4:04CR508 (N.D. Ohio) (Dkt. # 140). The Defendant was sentenced on July 22, 2005 to inter alia 60 and 97 months concurrent sentences of imprisonment.

Nearly sixteen months following the Government's filing of the Information against Kaschak, on December 27, 2005, the Plaintiff filed his complaint in the Court of Common Pleas, Trumbull County, Ohio alleging six claims for relief: (1) violations of his civil rights under 18 U.S.C. § 242, 42 U.S.C. § 1983, and the First, Fourth, Eighth, and Fourteenth Amendments against Budd, Strange, MCSD, Wellington, Deluca, Denson, Rivera, Hull, Kachaylo, Kaschak, and Dixon, (2) conspiracy to violate civil rights against all defendants, (3) intentional infliction of emotional distress against all defendants, (4) corrupt or racketeering activity in violation of O.R.C. Section 2923.32 against all defendants, and (5)

violation of 42 U.S.C. § 1983—municipal liability against MCSD.  <u>See</u> (Dkt. # 1, ("Compl.")).  The defendants removed the action to this Court on January 26, 2006.  <u>See</u> (Dkt. # 1).  The Clerk of Courts for the United States District Court for the Northern District of Ohio assigned the case to Senior United States District Court Judge David Dowd.

On January 31, 2006, Judge Dowd ordered the parties to brief whether the applicable statute of limitations barred the Plaintiff's claims.  <u>See</u> (Dkt. # 3).  The parties thereafter submitted briefs addressing the statute of limitations.  <u>See</u> (Dkt. # 4; Dkt. # 5).

Judge Dowd issued a recusal order on March 3, 2006 and the case was re-assigned to the docket of the undersigned.  On March 13, 2006, the Plaintiff filed an amended complaint therein adding a claim for relief captioned "fraudulent concealment."  <u>See</u> (Dkt. # 8).

The instant motion ensued.[3]

## III.  LAW AND ANALYSIS

"Statutes of limitation are not simply technicalities.  On the contrary, they have long been respected as fundamental to a well-ordered juridical system."  <u>Bd. of Regents v. Tomanio</u>, 446 U.S. 478, 487 (1980).  Thus, statutes of limitations are established in recognition that it would be "unjust to fail to put the adversary on notice to defend within a specified period of time and that 'the right to be free of stale claims in time comes to prevail over the right to prosecute them.'"  <u>United States v. Kubrick</u>, 444 U.S. 111, 117 (1979) (quoting <u>Railroad Telegraphers v. Railway Express Agency</u>, 321 U.S. 342, 349 (1944)).

---

[3]The Plaintiff did not file a Memorandum in Opposition to the instant motion.  In light of the procedural posture of this case, the Court shall construe the Plaintiff's Brief in Response to the Court's Order Dated January 31, 2006 (Dkt. # 4) as a Memorandum in Opposition.

### A.     The Amended Complaint

As a threshold matter, the Court observes that the Amended Complaint presents several interpretative challenges.  The Court shall address these challenges in turn.

*Official or Individual Capacity*

The Amended Complaint identifies a number of MCSD employees as defendants – however, the Plaintiff explicitly avers that each individual defendant was "acting in [his/her] official capacity."  See (Am. Compl. ¶¶ 4-13).  A 42 U.S.C. §1983 action brought against a government official in his official capacity is a suit against the governmental entity for which he is an agent, not the official himself.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Accordingly, it remains unclear as to whether the Plaintiff seeks relief against each defendant individually or whether he seeks to exclusively recover relief from the governmental entity – namely, Mahoning County.[4]

---

[4]Rule 9 of the Federal Rules of Civil Procedure provides that "[i]t is not necessary to aver the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity . . . except to the extent required to show the jurisdiction of the court." FED. R. CIV. P. 9 (a).  In Wells v. Brown, 891 F.2d 591 (6th Cir. 1989), the United States Court of Appeals for the Sixth Circuit established that a plaintiff seeking damages under Section 1983 must set forth clearly in his pleading that he was suing state officials as individuals, rather than as officials.  Id. at 592.  The Wells court advanced two rationales for its holding: (1) "[i]t is certainly reasonable to ask that all plaintiffs . . . alert party defendants that they may be individually responsible in damages," Wells, 891 F.2d at 594; and (2) "because the Eleventh Amendment places a jurisdictional limit on federal courts in civil rights cases against states and state employees, we understand Rule 9(a) to require plaintiffs to properly allege capacity in their complaint." Wells, 891 F.2d at 593.

In Moore v. City of Harriman, 272 F.3d 769 (6th Cir. 2001), the court tempered its decision in Wells by rejecting the prevalent view that it had adopted "a per se rule requiring § 1983 plaintiffs to affirmatively plead 'individual capacity' in their complaint."  Id. at 772 (citing Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995)).  The court expressly stated, "while it is clearly preferable that plaintiffs explicitly state whether a defendant is sued in his or her

*The First Claim for Relief*

The Plaintiff's first claim for relief advances several claims facially inapplicable to the case at bar. Captioned "First Cause of Action (Violation of Constitutional Rights)", said claim provides, in pertinent part:

> 61. Each of the above-named Defendants, separately and in concert, purposely and intentionally deprived Plaintiff of his rights, privileges, and immunities secured to Plaintiff by the First, Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States and the laws of the United States all in violation of 18 United States Code Sec. 242 and 42 United States Code Sec. 1983.
>
> 62. The actions of the above-named Defendants as described herein were unreasonable, unnecessary, unconscionable, excessive and shocking to the conscience.
>
> 63. The excessive use of force exerted upon Plaintiff was maliciously and sadistically imposed for the express purpose of causing harm.
>
> 64. The excessive use of force was not in good faith and constitutes wanton infliction of physical pain.

(Am. Compl. ¶¶ 61-64.)

---

'individual capacity,' failure to do so is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice." Id. (internal citation and quotation marks omitted).

Harriman's "course of proceedings" test examines "the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability." Harriman, 272 F.3d at 772 n.1 (citing Biggs, 66 F.3d at 61). The Harriman court further stated that the courts must consider "whether the parties are still in the early stages of litigation. This ensures both fairness to defendants, Wells's first concern, and the resolution of any jurisdictional problems at an early stage, Wells's second concern." Harriman, 272 F.3d at 772 n.1. The Court therefore shall construe the Amended Complaint for the purposes of the present motion as alleging claims against the defendants in their individual and official capacities.

The Plaintiff specifically alleges that the defendants violated 18 U.S.C. § 242.  See (Am. Compl. ¶ 61).  As discussed *supra*, the Government previously charged the defendants with criminal violations of this statute.  It is well-settled, however, that said provision of the United States Code does not provide the injured party with a civil remedy.  See Watson v. Devlin, 167 F.Supp. 638, 640 (6th Cir. 1958) ("These sections [18 U.S.C. §§ 241 and 242] are part of the criminal code and civil relief is not afforded by them."), aff'd by, 268 F.2d 211 (6th Cir. 1959).

The Plaintiff also refers to the Eighth Amendment to the United States Constitution. The Eighth Amendment does not apply to pretrial detainees such as the Plaintiff.[5]  See Roberts v. City of Troy, 773 F.2d 720, 723 (6th Cir. 1985).

Moreover, while the first claim for relief sounds to a great extent in excessive force (Fourth Amendment) and substantive due process (as applied to pretrial detainees through the Fourteenth Amendment), there lacks any factual allegations provided therein that conceivably could give rise to the First Amendment violation referenced in paragraph 61.

Consequently, for the purposes of the present motion, the Court shall construe the first claim for relief as alleging violations of the Fourth and Fourteenth Amendments of the United States Constitution as vindicated pursuant to 42 U.S.C. § 1983.

*The Second Claim for Relief*

The Plaintiff's second claim for relief – captioned "Conspiracy to Violate Civil

---

[5]The Court acknowledges that the Plaintiff presently is an inmate with the ODRC subject to the Eighth Amendment's proscription against cruel and unusual punishment. However, at the time of the alleged excessive force, it is undisputed that he was a pretrial detainee subject to Fourteenth Amendment standards.

Rights" – presents several additional challenges.  First, the Plaintiff does not cite any statutory basis for the conspiracy claim(s).  The Court acknowledges that the traditional statutory vehicle for advancing a conspiracy arising from a violation of civil rights is 42 U.S.C. § 1985.  However, a review of the pleading and the parties' filings reveals a lack of any citation to Section 1985.[6]

The United States Court of Appeals for the Sixth Circuit has recognized that conspiracy may serve as a theory of liability in claims advanced pursuant to Section 1983. The Sixth Circuit has outlined the standard for reviewing a Section 1983 conspiracy claim:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action.  Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy.  Each conspirator need not have known all of the details of the illegal plan or all of the participants involved.  All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

Spadafore v. Gardner, 330 F.3d 849, 854 (6th Cir. 2003) (citing Hooks v. Hooks, 771 F.2d

_____

[6]Section 1985(1), which prohibits conspiracies to interfere with federal officers in the performance of their duties is inapplicable to this case.  Under both the second clause of § 1985(2), which prohibits conspiracies to interfere with due process in state courts with the intent to deprive persons of their equal protection rights, and § 1985(3), which prohibits conspiracies to deprive persons of their equal protection rights, a plaintiff must allege that there was "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  Kush v. Rutledge, 460 U.S. 719, 726 (1983); see also Collyer v. Darling, 98 F.3d 211, 233 (6th Cir. 1996). The Amended Complaint does not state a claim under these provisions of Section 1985 because there lacks any allegation, conclusory or otherwise, of any class-based motivation with regard to defendants' actions.  See Farhat v. Jopke, 370 F.3d 580, 599 (6th Cir. 2004).

However, the first clause of § 1985(2), which prohibits conspiracies to influence parties, witness, or jurors in federal court proceedings, may be applicable to this case.  Again, the Plaintiff has not made any reference to Section 1985 and, as the statute of limitations for section 1985 actions is identical to that utilized to analyze claims brought pursuant to section 1983, the court would reach the same conclusion discussed *infra*.

935, 943-44 (6th Cir. 1985) (internal citations omitted)).  However, the contours of a Section 1983 conspiracy claim remain unsettled in the federal courts.  As the Seventh Circuit has stated, "section 1983 does not . . . punish conspiracy; an actual denial of a civil right is necessary before a cause of action arises."  Goldschmidt v. Patchett, 686 F.2d 582, 585 (7th Cir. 1982); see also Cefalu v. Village of Elk Grove, 211 F.3d 416, 423 (7th Cir. 2000) (holding that "there is no constitutional violation in conspiring to cover-up an action which does not itself violate the Constitution").  For the purposes of the present motion, the Court shall assume *arguendo* that a claim alleging violations of Section 1983 through a conspiracy theory of liability is viable in the Sixth Circuit.  See Spadafore, 330 F.3d at 854.

A straightforward reading of the section 1983 conspiracy claim suggests that the Plaintiff attempts to allege three separate conspiracies: (1) a conspiracy by all defendants "to obstruct justice thereby depriving [him] of his right to Substantive Due Process and Equal Protection of Law under the Constitution", (Am. Compl. ¶ 69); (2) a conspiracy to "engage in misleading conduct with the intent to hinder, delay or prevent the discovery of the constitutional violations inflicted upon Plaintiff by the Defendant herein by federal/state authorities", (Am. Compl. ¶ 70); and (3) a conspiracy to deprive him "of his right to Substantive Due Process and Equal Protection of Law by preventing Plaintiff from obtaining a fair hearing within the internal grievance procedure of the Sheriff's Department", (Am. Compl. ¶ 71).[7]  A close inspection of the conspiracies reveals that the Plaintiff seeks relief

_____

[7]As for the third alleged conspiracy, all circuits to consider this issue have found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures, see, e.g., Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988);

arising from the defendants purported conspiracy to "cover-up" the use of excessive force utilized against the Plaintiff.  The Court has located a Sixth Circuit case stating that in some circumstances "a conspiracy to cover up a killing, thereby obstructing legitimate efforts to vindicate the killing through judicial redress, interferes with the due process right of access to courts." Swekel v. City of River Rouge, 119 F.3d 1259, 1262 (6th Cir. 1997) (citing Bell v. City of Milwaukee, 746 F.2d 1255, 1261 (7th Cir.1984)).  The Court, therefore, shall construe the Plaintiff's second claim for relief as alleging a conspiracy to deny the Plaintiff access to courts as vindicated by Section 1983.

### B.      Plaintiff's 42 U.S.C. § 1983 Claims

Turning to the Section 1983 claims alleged in claims one (excessive force / substantive due process), two (conspiracy to deny access to courts) and six (municipal liability) of the Plaintiff's Amended Complaint, it is well-settled that the appropriate statute of limitations applicable to Section 1983 actions is the state statute of limitations governing personal injury claims.  See Wilson v. Garcia, 471 U.S. 261, 276-280 (1985).  Ohio law therefore provides a two year statute of limitations for Section 1983 actions.[8]  See OHIO REV. CODE § 2305.10; Browning v. Pendleton, 869 F.2d 989, 992 (6th Cir. 1989).

---

Young v. Gundy, 30 Fed. Appx. 568, 569-70 (6th Cir. 2002), and the Plaintiff has failed to allege any facts tending demonstrate that he was treated differently than any other pre-trial detainee in pursuing his grievance.  Therefore, there potentially lacks any cognizable due process or equal protection claim arising from the Plaintiff's attempts to utilize the grievance procedure.

[8]The Plaintiff contends that Ohio's four-year "residual" statute of limitations applies to this action.  The Sixth Circuit, sitting en banc, explicitly has held that Ohio's two statute of limitations applies to Section 1983 claims, see Browning, 869 F.2d at 992, and has rejected an identical argument to that advanced by the Plaintiff, see LRL Properties v. Portage Metro Housing Auth., 55 F.3d 1097, 1105 n.2 (6th Cir. 1995).

Although Ohio law establishes the applicable limitations period, the Court utilizes federal procedural law to determine the time of the claims' accrual.  See Sevier v. Turner, 742 F.2d 262, 272 (6th Cir. 1984).  Federal procedural law provides that the statute of limitations begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action."  See Kuhnle Bros., Inc. v. County of Geauga, 103 F.3d 516 (6th Cir. 1997) (quoting Sevier, 742 F.2d at 273).  In determining when the cause of action commences to accrue in Section 1983 cases, we look to the event that should have alerted the typical lay person to protect his or her rights.  See Dixon v. Anderson, 928 F.2d 212, 215 (6th Cir. 1991).

> *The date when the Excessive Force / Substantive Due Process claims commenced to accrue*

It is undisputed that the alleged use of excessive force occurred on December 28, 2001.[9]  It is further undisputed that the Plaintiff "was unquestionably aware that he was beaten on December 28, 2001 and aware of the identity of the active participants in that beating."  (Dkt. # 4, Pl.'s Br. in Resp. to the Ct.'s Order at 3.)  It follows that any claim arising from the December 28, 2001 use of excessive force / substantive due process violations began to accrue on December 28, 2001.

The Plaintiff did not attempt to file his claim until four years later.  The Plaintiff now attempts to escape the two-year statute of limitations by asserting that the limitations period

---

[9]The Amended Complaint alleges that the first incident of excessive force occurred on December 28, 2001 – however, it is silent as to the second incident.  The parties' filings suggest that December 28, 2001 is the date of each incident.  The factual basis for the plea agreements discussed *supra* confirm that the second incident occurred "[l]ater that same shift." See, eg., United States v. Raymond Hull,et al., 4:04CR381 (N.D. Ohio) (Dkt. # 64).

-15-

commenced to accrue on April 6, 2004 as that was the earliest date "a reasonably prudent person would have been aware of all state actors and co-conspirators responsible for the violation of Plaintiff's constitutional rights." (Dkt. # 4, Pl.'s Br. in Resp. to the Ct.'s Order at 10.) Specifically, the Plaintiff asserts that the statute of limitations did not commence until the Government issued the Information against Kaschak therein revealing that the excessive force was applied at the direction of "senior management." See (Dkt. # 4, Pl.'s Br. in Resp. to Court's Order at 12). The Plaintiff contends that he was unaware before the issuance of the Information that the violation of his constitutional rights was "sanctioned by supervisory state officers and pursuant to an unofficial/unwritten policy and/or custom of the Mahoning Sheriff's Department." See (Dkt. # 4, Pl.'s Br. in Resp. to the Ct.'s Order at 10, 12).

The Plaintiff's argument stands in direct opposition to established precedent. Federal procedural law provides that a plaintiff need not be aware of every detail or person involved in causing his injury for the limitations period to commence. See Mounts v. Grand Trunk Western R.R., 198 F.3d 578 (6th Cir. 2000) (holding that under the discovery rule, a cause of action "accrues" when an employee knows of the injury and its cause, not from discovery of legal liability);[10] New Castle County v. Halliburton NUS Corp., 111 F.3d 1116 (3d Cir. 1997) (holding that the discovery rule does not delay the running of the statute of limitations until a plaintiff is aware of all the facts, including identification of every party who may be

---

[10]The discovery rule applies where "the injured person sustains an injury which cannot itself reasonably be discovered, or the cause of which cannot reasonably be discovered, until some time following the tortious event and the running of the statute of limitations." Hicks v. Hines, Inc., 826 F.2d 1543, 1544 (6th Cir. 1987). When such a circumstance arises, the statute of limitations is tolled until "the date by which the plaintiff reasonably should have discovered both cause and injury." Hicks, 826 F.2d at 1544.

liable on its claim); <u>Compton v. Ide</u>, 732 F.2d 1429, 1433 (9th Cir. 1984) ("When a plaintiff

has notice of wrongful conduct, it is not necessary that he have knowledge of all the details

or all of the persons involved in order for his cause of action to accrue.") (citing <u>Blanck v.

McKeen</u>, 707 F.2d 817, 819-20 (4th Cir. 1983) (per curiam) <u>cert. denied</u>, 464 U.S. 916, 104

S. Ct. 279, 78 L. Ed. 2d 258 (1983)).[11]  It is undisputed that the Plaintiff was aware of his

injury(ies) at the hands of at least several of the defendants on December 28, 2001.  While

the Plaintiff purportedly lacked knowledge as to the entire scope of persons involved in his

injuries until April 6, 2004, the Plaintiff concedes that he knew the identity of at least five

---

[11]The Plaintiff relies upon a Fifth Circuit case, <u>Lavalee v. Listi</u>, 611 F.2d 1129 (5th Cir. 1980), as support for his theory that "until the plaintiff is in possession of critical information such as who has inflicted the injury, the statute of limitations does not commence to run." (Pl.'s Br. in Resp. to Court's Order at 11.)  However, the Plaintiff misconstrues that opinion.

In <u>Lavalee</u>, the court merely interpreted the Supreme Court's decision in <u>United States v. Kubrick</u>, 444 U.S. 111, to hold that the statute of limitations does not commence to run until the "plaintiff was or should have been aware of the causal connection between his injury and the acts of the defendants." <u>Lavalee</u>, 611 F.2d at 1131.  With this legal principle in hand, the <u>Lavalee</u> court decided that it lacked sufficient information to determine whether a plaintiff who had been subjected to an unwanted spinal tap by law enforcement officers was aware of the causal connection between the defendants actions and his permanent injury—"until [the plaintiff] suspected, or should have suspected, that his pain was not the result of a properly-conducted spinal tap or of the alleged assaults, he lacked any factual basis on which to suspect an invasion of his legal rights."  <u>Id.</u> at 1132.

In contrast, it is uncontroverted that the Plaintiff was aware he had been injured the moment defendants dragged him from his cell and applied excessive force.  Indeed, finding that the statute of limitations commenced to accrue on December 28, 2001 is consistent with other cases cited by the plaintiff.  <u>See</u> <u>Chappell v. Rich</u>, 340 F.3d 1279, 1283 (11th Cir. 2003) (finding that statute of limitations commenced to accrue when "[t]he Chappell children knew that their mother had been murdered, who the alleged perpetrators were, and that Rich had been convicted of manslaughter for this killing before the statute of limitations for a wrongful death suit expired");  <u>Nasim v. Warden, Md. House of Correction</u>, 64 F.3d 951, 955 (4th Cir. 1995) ("[F]or purposes of a § 1983 claim, a cause of action accrues either when the plaintiff has knowledge of his claim or when he is put on notice--e.g., by the knowledge of the fact of injury and who caused it--to make reasonable inquiry and that inquiry would reveal the existence of a colorable claim.").

of the deputies involved in the use of excessive force at the time of his injuries.  <u>See</u> (Am.

Compl. ¶¶ 18-21). Accordingly, any Section 1983 claim arising from the events of December

28, 2001 is barred by the two year statute of limitations.

> *The tolling of limitations period  for the excessive force/substantive due process claims through the doctrine of equitable estoppel/fraudulent concealment*

The Plaintiff nevertheless implores the Court to invoke various equitable doctrines to

toll the running of the statute of limitations.  The Sixth Circuit has held in an unreported case

that "[s]tate statutes of limitations and tolling principles apply to determine the timeliness of

claims asserted under 42 U.S.C. § 1983."  <u>Howard v. Rea</u>, 111 Fed. Appx. 419, 421 (6th Cir.

Sept. 17, 2004).  In another unreported case, the court has held that state tolling principles

apply "except when dealing with federal claim or in unusual cases where doing so would

produce an outcome substantially different from the outcome that would have been obtained

in state court."  <u>Weikle v. Skorepa</u>, 69 Fed. Appx. 684, 683 (6th Cir. July 7, 2003) (citations

omitted).  The Second Circuit has recognized that the "seemingly clear-cut bifurcation

between accrual, governed by federal law, and tolling rules, governed by state law, obscures

two matters."  <u>Pearl v. The City of Long Beach</u>, 296 F.3d.76, 80 (2d Cir. 2002).

> First, it is not clear . . . whether in section 1983 actions we are to borrow only a state's "tolling rules" that have been incorporated into state statutes or, in addition other aspects of a state's common law . . . . Second, it is not clear whether state or federal law applies where the circumstances governing accrual are similar, if not identical to, circumstances pertinent to a state tolling rule, a recurring issue in cases where tolling is sought on the ground of fraudulent concealment.

<u>Id</u>.  Employing a well-reasoned analysis, the court concluded that federal courts should

borrow state statutory and common law tolling rules, and that it is "likely" that courts should

-18-

apply state law principles to claims of fraudulent concealment/equitable estoppel. Id. at 83-84.  This Court need not conclusively resolve the matter as the outcome of this case is unaffected under state or federal principles of equitable estoppel/fraudulent concealment.

The Plaintiff refers interchangeably to "equitable tolling" "equitable estoppel" and "fraudulent concealment" throughout his memorandum – a practice common among the courts and the bar in this area of law.  See Hill v. United States DOL, 65 F.3d 1331, 1338 (6th Cir. 1995).  Regardless of the precise nomenclature, the federal courts sparingly utilize equitable doctrines to toll statute of limitations.  See Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990); Graham-Humphreys v. Memphis Brooks Museum of Art, 209 F.3d. 552, 560 (6th Cir. 2000).  Indeed, "[a]bsent compelling equitable considerations, a court should not extend limitations by even a single day." Graham-Humphreys, 209 F.3d at 561.

Equitable tolling applies where there lacks any allegation of impropriety on the defendant's part, while equitable estoppel (otherwise referred to as fraudulent concealment) applies exclusively in situations where demonstrated egregious wrongdoing by a defendant prevents a plaintiff from bringing suit on a claim of which plaintiff is aware.  See Hill, 65 F.3d at 1335 n.2; Doe v. Archdiocese of Cincinnati, 109 Ohio St. 3d 491, 2006 Ohio 2625, 849 N. E.2d 268 (May 31, 2006) (holding that fraudulent concealment requires specific actions on the part of the defendant designed to prevent the plaintiff from bringing suit).  As the Plaintiff repeatedly contends that it was the defendants' fraudulent behavior in "covering up" the use of excessive force that requires the tolling of the statute of limitations, the Court shall target its inquiry on equitable estoppel/fraudulent concealment.

Equitable estoppel prevents "a party from asserting certain facts where the party, by

his conduct, has induced another to change his position in good faith reliance upon that conduct." Ohio ex rel. Cities Serv. Oil Co. v. Orteca, 63 Ohio St. 2d 295, 409 N.E.2d 1018, 1020-21 (1980); see Bridgeport Music Inc. v. Diamond Time, Ltd., 371 F.3d 883, 891 (6th Cir. 2004) ("Equitable estoppel, sometimes referred to as fraudulent concealment, is invoked in cases where the defendant takes active steps to prevent the plaintiff suing in time, such as hiding evidence or promising not to plead the statute of limitations.").  "A prima facie case for equitable estoppel requires a plaintiff to prove four elements: (1) that the defendant made a factual misrepresentation; (2) that it is misleading; (3) [that it induced] actual reliance which is reasonable and in good faith; and (4) [that the reliance caused] detriment to the relying party."  Doe v. Blue Cross/Blue Shield of Ohio, 79 Ohio App. 3d 369, 379, 607 N.E.2d 492 (Ohio 10th App. Dist., Franklin County).  "In order to apply the doctrine to the statute of limitations, a party must show that the misrepresentation [which constitutes the alleged estoppel] was calculated to induce a plaintiff to forego the right to sue." Hoeppner v. Jess Howard Electric, 150 Ohio App. 3d 216, 225, 2002 Ohio 6167, 780 N.E.2d 290 (Ohio 10th App. Dist., Franklin County); see Dayco Corporation v. Good Year Tire & Rubber Company, 523 F.2d 389, 394 (6th Cir. 1975) ("Three elements must be pleaded in order to establish fraudulent concealment: (1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts.").

The Plaintiff suggests that equitable estoppel/fraudulent concealment serves to toll the statute of limitations during the four years where he failed to file suit.  Relying on several

cases from outside of Ohio and the Sixth Circuit, the Plaintiff contends that defendants' fraudulent conduct subsequent to December 28, 2001estopps the defendant from asserting the statute of limitations as a defense.  For example, the Plaintiff relies on <u>Piotrowski v. City of Houston</u>, 51 F.3d 512 (5th Cir. 1995), for the notion that defendants who actively conceal their wrongdoing are estopped from asserting that the statute of limitations accrued during the period of concealment.  <u>See</u> (Pl.'s Br. in Resp. to Court's Order at 9, 16-17).  There, the plaintiff brought a Section 1983 action against the City of Houston in 1993 for failing to warn her that she was the target of a targeted killing in 1980.  <u>Piotrowski</u>, 51 F.3d at 514.  The plaintiff specifically alleged that the police were aware of the threat to her life before the attempted homicide – a fact she discovered during a police officer's 1993 civil deposition in an unrelated matter.  <u>Id</u>.  The district court dismissed the case on limitations grounds reasoning that the plaintiff knew at the time she was shot that the police department had failed to protect her, therefore her claim had accrued in 1980, which was more than two years before she filed suit.  <u>Id</u>.  The Fifth Circuit reversed the district court's finding on limitations grounds opining that "[w]hen a defendant controls the facts surrounding causation such that a reasonable person could not obtain the information even with a diligent investigation, a cause of action accrues, but the statute of limitations is tolled."  <u>Id.</u> at 517.

Contrary to the Plaintiff's assertions, <u>Piotrowski</u> is inapposite to the present case in two key respects.  First, the Fifth Circuit did not reach the conclusion the Plaintiff suggests.  While, the court opined that it could not "say as a matter of law that the limitations period started in 1980", <u>id.</u> at 517, it went on to state that "[n]or can we say as a matter of law that the limitations period did not start until January, 1993, when Piotrowski learned of the police

officer's deposition . . . . Determining the validity of the City's contention, however, would require us to go beyond the pleadings, and we will not entertain it at this time", id. at 517 n.13.  Consequently, the court left open the issue of timeliness and resolved the matter on other grounds.

Secondly, the facts of the present case widely diverge from those presented in Piotrowski.  There, the plaintiff was aware that she was shot by a third-party in 1980, but arguably lacked any indication that the police department had advance knowledge of the threat until 1993.  Therefore, she was unaware of the injury (i.e., a state-created danger in violation of the Fourteenth Amendment) purportedly until 1993.  However, in the instant matter, the Plaintiff was aware that he was injured in December 2001 and that several of defendants were the tortfeasors.  The plaintiff additionally was aware that the tortfeasors were employees of the MCSD.  The Plaintiff's awareness as to his injury and potential liability of at least several of the defendants renders the case wholly distinct from Piotrowski.

Likewise, Dory v. Ryan, 999 F.2d 679 (2d Cir. 1993), does not serve the Plaintiff's cause.  There, the court held that the doctrine of equitable estoppel tolled the statute of limitations where an inmate received an affidavit from a prosecution witness outside of the limitations period therein indicating that the assistant district attorney conspired with police to fabricate the witnesses's testimony.  See id. at 681.  Again, the plaintiff was unaware of his injury – namely, that he had been subject to inter alia prosecutorial misconduct and a conspiracy to convict him based on perjured testimony – until he received the affidavit from the witness.  See Pearl v. The City of Long Beach, 296 F.3d 76, 86-87 (2d Cir. 2002) ( analyzing Dory and reasoning that "[a]lthough Dory knew all along what he claimed the true

facts were concerning his lack of criminal culpability and he must have thought at the time of trial that the police officer and the recanting witness were lying, he had no basis for knowing that their false testimony resulted from a conspiracy between the prosecutor and the police officer"). By contrast, the present Plaintiff was aware of his injury on December 28, 2001 at the hands of several of the defendants. He knew the defendants were employees of the MCSD. Yet, he failed to file suit within the limitations period.

Furthermore, the Court's independent review of pertinent federal case law compels a conclusion that weighs heavily against an application of equitable estoppel/fraudulent concealment. In Pearl, 296 F.3d 76, the court declined to apply the equitable estoppel doctrine to revive an expired Section 1983 claim notwithstanding claims of fraudulent concealment in a police brutality suit. As the facts are remarkably analogous to the case *sub judice*, the Court shall provide a brief recitation.

In 1967, the plaintiff, then sixteen years old, was stopped on the street and brutally attacked by four police officers. Pearl, 296 F.3d at 78. The county prosecutor charged the plaintiff with assaulting a police officer, resisting arrest, and disorderly conduct. See id. The plaintiff was initially convicted at a bench trial, but the conviction was overturned on appeal because the plaintiff had unconstitutionally waived his right to a jury trial in order to maintain juvenile offender status. See id. The second trial ended in a deadlocked jury and a mistrial. See id. At each trial, all four officers involved in the incident testified against the plaintiff.

Prior to sentencing in the first trial, the plaintiff and his mother brought a state civil suit under 42 U.S.C. § 1983 against the City of Long Beach and the officers, alleging

excessive force by them, and recklessness on the part of the City in allowing its officers to assault the plaintiff. <u>See</u> <u>id</u>. In their pretrial depositions for the civil case, the officers gave their account of the episode. <u>See</u> <u>id</u>. In 1972, with the third criminal trial impending, the plaintiff and his mother chose to settle their civil suit. <u>See</u> <u>id</u>.

In June 1999, one of the officers involved in the 1967 episode, submitted a sworn statement to the Nassau County District Attorney, stating that the officers' testimony in the plaintiff's case was fabrication. <u>See</u> <u>id.</u> at 109 He confessed that he "never saw Pearl throw a punch or kick any of the police officers involved," and that another officer "laid out the story as to what the reports should say." <u>Id</u>. In a second affidavit given in May 2000, the officer recounted the extent of brutality within the Long Beach Police Department. <u>See</u> <u>id</u>. He also averred: "When we were sued by Mr. Pearl we insisted that the City hire as our attorney Leon Stern. He was most familiar with the facts of the case as he was allowed to be present in the Grand Jury room while the Pearl case was being presented. In fact, he gave us detailed accounts of each civilian witness's testimony so that we could adjust our presentation. . . . He was 'one of the boys' while an Assistant District Attorney and understood the way we operated." <u>Id</u>.

The officer's first affidavit prompted the plaintiff to institute the a lawsuit on January 19, 2000, asserting federal causes of action under 42 U.S.C. § 1983 and RICO, 18 U.S.C. § 1961 *et seq.*, claims under the Fourth, Fifth, Eighth, and Fourteenth Amendments, and state law claims. The plaintiff sought to revive claims extinguished by the 1972 settlement, such as his excessive force claim against the individual officers, and also sought to assert, purportedly for the first time, claims that he alleged became known to him only in 1999. The

-24-

latter included: section 1983 claims against the officers for conspiracy to cover-up, against the City or failure to protect, and against the City false imprisonment, intentional and negligent infliction of emotional distress and negligence under state law; fraud under state law; and a RICO claim.

The district court dismissed the case on statute of limitations grounds. The Second Circuit affirmed, reasoning:

> Pearl was obviously aware of his cause of action for police brutality at the time of the 1967 episode and not only could have sued the officers, but did so. Even if we assume that the alleged fraud of the officers in concocting a false account of the episode would provide a basis for setting aside the 1972 settlement of Pearl's state court civil suit . . . a renewed assertion of his claims against the officers would be time-barred. Although the police officers' allegedly false testimony in Pearl's two criminal trials and in the depositions for his state court suit undoubtedly induced Pearl and his mother to settle that suit for a modest sum, the facts of the episode, as he now alleges them to be, were fully known to Pearl in 1967. What he has now . . . is more persuasive evidence, not newly developed awareness of a previously concealed cause of action.

Pearl, 296 F.3d at 85.

In the instant matter, as repeatedly discussed *supra*, the Plaintiff was aware of his injury and knew the identity of at least several of the tortfeasors at the time of the alleged use of excessive force. The Plaintiff additionally attempted to file an internal grievance predicated on his awareness of those claims – to no avail. See (Am. Compl. ¶¶ 71, 79); (Dkt. # 9, Pl.'s Reply Br. at 5). While the subsequent revelations made during the defendants' criminal proceedings provided extremely persuasive evidence to support the Plaintiff's claims, as in Pearl, they did not provide newly developed awareness of those claims.

A recent pronouncement of the Supreme Court of Ohio further strikes against the

application of equitable estoppel/fraudulent concealment in the case at bar.  In Doe v. Archdiocese of Cincinnati, 109 Ohio St. 3d 491, 2006 Ohio 2625, 849 N. E.2d 268, the court held that the equitable estoppel doctrine was inapplicable to claims brought by a church parishioner against his a former priest, the archbishop and the archdiocese for sexual abuse inflicted by the priest twenty-three years earlier (from 1980-1983).  The plaintiff alleged that he was unaware other parishioners had been abused by the priest until April 2002 and filed suit in March 2004.  The state trial court dismissed the matter on statute of limitations grounds and the appellate court reversed.   The Supreme Court of Ohio reversed and dismissed the case with prejudice on the basis of timeliness.  The court specifically held that as the plaintiff "knew the identity of the alleged perpetrator, knew that the alleged perpetrator was a priest of the Archdiocese of Cincinnati, and knew that a battery occurred" the claim began to accrue at the date he attained majority.  Doe, 109 Ohio St. 3d at 495, 2006 Ohio 2625 ¶ 20.  The court further rejected the plaintiff's invocation of equitable estoppel, holding:

> It is therefore fundamental to the application of equitable estoppel for plaintiffs to establish the subsequent and specific actions by defendants somehow kept them from timely bringing suit.
>
> In this case, there are no allegations of any misstatements by the Archdiocese. Doe does not allege in his complaint that he reported the abuse, made any inquiry, or had any other contact with the Archdiocese.  Hence, Doe does not claim that he relied on any misrepresentation.
>
> We hold that Doe's cause of action was not concealed from him – i.e., he knew or should have known all of the elements of potential causes of action against the Archdiocese within two years after he reached majority.  Doe concedes in his complaint that he at all times knew the identity of his alleged perpetrator and knew the employer of his alleged perpetrator.  Thus, he had all of the facts necessary to investigate and prosecute his potential causes of action.

Doe, 109 Ohio St. 3d at 502, 2006 Ohio 2625 ¶¶ 44-47 (internal citations and quotations

omitted).

As with the plaintiff in <u>Doe</u>, the present Plaintiff knew the identity of the perpetrators, the employer of the perpetrators, and that he suffered an injury.  Under Ohio law, therefore, the Plaintiff "had all of the facts necessary to investigate and prosecute his potential causes of action."[12]

A final factor forecloses the Plaintiff's attempted invocation of equitable principles. Assuming *arguendo* that the defendants' actions following the December 28, 2001 incident created some hesitation on the part of the Plaintiff in filing these claims, there lacks any rationale for the Plaintiff waiting sixteen months from the issuance of the first Information filed against an MCSD deputy to the date that he filed suit.  See <u>Bridgeport Music, Inc.</u>, 371 F.3d at 891 ("To invoke equitable estoppel, a plaintiff must demonstrate that his ignorance is not attributable to a lack of diligence on his part.") (Internal quotation and citation omitted).   Accordingly, the Court declines to invoke the doctrine of equitable

---

[12]The Court notes that <u>Doe</u>'s observation that the plaintiff  failed to allege any "misstatements by the Archdiocese" at first blush may appear to weigh in favor of an application of equitable estoppel/fraudulent concealment in the present case.  However, as the dissent in that case observed, the plaintiff explicitly alleged that he was unaware until 2002 of the diocese's actions.  See <u>Doe</u>, 109 Ohio St. 3d at 505, 2006 Ohio 2625 ¶ 61 (Pfeifer, J., dissenting) ("Although the sexual abuse is the sine qua non of this case, the additional knowledge about the diocese that the plaintiff gained in later years changed the nature of his experience.  To be victimized by the depravity of one fallen priest is its own tragedy, personal in nature, and seemingly random in incidence.  But to be victimized by a priest whom the diocese knew to be a serial sexual predator, and yet reassigned again and again to work in parishes, makes the plaintiff the victim of a well-thought-out conspiracy.").  The dissenting opinion echoes the arguments made by the Plaintiff in the present case.  See (Pl.'s Br. in Resp. to the Court's Order at 13) ("[T]he seemingly spontaneous actions of a group of angry deputies in beating him is one thing, a beating administered pursuant to official custom and policy upon the order of supervisors is an entirely different matter.").  This position nevertheless was rejected by the majority in <u>Doe</u>.

estoppel/fraudulent concealment to toll the Plaintiff's excessive force/substance due process claims (the First Claim for Relief).

*The Section 1983 Conspiracy Claims*

The Court further determines that the statute of limitations bars the Section 1983 conspiracy claim advanced in the Plaintiff's second claim for relief.  In Paige v. Police Dep't of the City of Schenectady, 264 F.3d 197 (2d Cir. 2001), the court held that where a plaintiff was barred by the statute of limitations from pursing a Section 1983 claim for sexual assault by a police officer, the plaintiff likewise was barred from asserting a conspiracy claim arising from the police department's efforts to cover up that assault.  Specifically, the plaintiff instituted the action on April 2, 1997, alleging causes of action pursuant to 42 U.S.C. §§ 1983, 1985, and 1986.  See Paige, 264 F.3d 199.  The plaintiff alleged that twenty years earlier, when she was twelve years old, a police officer sexually assaulted her.  See id.  The plaintiff also alleged that members of the city police department subsequently conspired to cover-up the crime as well as the department's inadequate investigation of it, thereby depriving her of due process, equal protection of the laws and access to the courts.  See id.

The defendants filed motions for summary judgment on the basis of statute of limitations.  See id.  The plaintiff countered that a newspaper reporter advised her in 1996 that the police department held a previously undisclosed investigatory file that identified the suspect in the sexual assault as well as detailed the police department's deliberate failure to pursue to the case.  See id.  The plaintiff therefore argued that the statute of limitations did not commence to accrue until 1996.  See id.

The district court determined that all of the plaintiff's claims were barred by the

-28-

applicable statutes of limitations reasoning: "[The plaintiff] knew of sufficient facts, or with due diligence could have secured such knowledge, in order to commence a suit based upon her . . . causes of action well within the applicable statutes of limitations." Paige v. Police Dep't, 121 F. Supp.2d 723,729 (N.D. N.Y. 2000).  On appeal, the Second Circuit affirmed determining that "[a]lthough some of the facts putatively concealed by the defendants might have strengthened [the plaintiff's] case by corroborating her story, [the court] find[s] that the absence of those facts did not sufficiently justify [the plaintiff] in not pursuing her cause of action as to merit equitable tolling." Paige, 264 F.3d at 200.  The court further determined:

> [W]e hold that, because[ the plaintiff] was ultimately not prevented from bringing her § 1983 assault claim, the asserted conspiracy denied her no federal right, and that therefore her complaint failed to state a cause of action as to the remaining §§ 1983, 1985 and 1986 claims.

> This is not to say, however, that all claims alleging the illegal deprivation of a cause of action are necessarily extinguished simply because the statute of limitations for the underlying claim is held to have run.  In this case, the alleged police conspiracy had no significant effect upon [plaintiff's] ability to bring her cause of action for sexual assault.  [The plaintiff's] claim against Officer Guthinger could have been brought regardless of the conspiracy . . . .

Id.

This Court finds the persuasive reasoning of Paige applicable to case at bar.  As discussed *supra*, the Plaintiff was aware of his injury and the identity of several of the tortfeasors in December 2001.  He declined to file suit within the limitations period.  The Plaintiff then filed a claim arising from the use of excessive force / substantive due process and a claim alleging conspiracy to prevent him from accessing the courts.  As further discussed *supra*, the Plaintiff was required to bring his excessive force / substantive due process claim within the two years limitations period.  He did not file a timely suit, and as

in Paige, the Plaintiff is barred from bringing a conspiracy claim for denying access to courts when he did not avail himself of judicial proceedings.

However, assuming the Plaintiff could advance a viable conspiracy claim, such claim nevertheless would be time-barred. The Sixth Circuit has held that the "existence of a conspiracy does not generally postpone accrual of causes of action arising from the conspirators' separate wrongs." McCune v. City of Grand Rapids, 842 F.2d 903, 906 (6th Cir. 1988) (internal citation and quotation omitted). Otherwise known as the "last overt act doctrine", the continuance of a conspiracy does not extend the accrual date beyond that date when injury or damage occurs to the Plaintiff. See LDL Prop., 55 F.3d at 1106-07.

The Court finds that the proper accrual date for the conspiracy to deny access to courts claim was January, 2001 – that is, the time when the defendant became aware that he was being deprived of a hearing and information relating to his internal grievance. At this stage, a typical layperson would have been aware that the defendants – in the plaintiff's words – had "circled their law enforcement wagons", (Pl.'s Br. in Resp. to Court's Order at 3), to deprive him of access to the courts.[13] See Pearl, 296 F.3d at 87 ("Nor can Pearl now assert a previously concealed cause of action by pointing to a conspiracy among the four police officers who testified against him. Knowing what he contends the true facts were, he had reason to believe they were lying, and because their versions were identical, it was a

---

[13]Assuming that the Court was willing to step outside of established precedent and search for any act committed through the conspiracy as the starting point for the limitations period, a review of the Amended Complaint reveals that the claim remains time-barred. The last conceivable overt act alleged to have been committed by the defendants was Wellington's and Budd's destruction of the letter in September 2002. See (Am. Compl. ¶¶ 34-39).

reasonable inference that the officers had agreed to present their allegedly false versions.").
As the Plaintiff failed to file his claim within two years of the date of accrual, the claim is
time-barred as a matter of law.

Furthermore, for the reasons stated *supra*, the Court finds that the facts of the present
case do not warrant the invocation of equitable estoppel/fraudulent concealment on the
second claim for relief.

### The Section 1983 Municipal Liability Claim

The Plaintiff captions his sixth claim for relief as a "Violation of Constitutional Rights
– Municipal Liability."  As examined throughout the foregoing analysis, the Court finds that
there were sufficient facts known to the Plaintiff on December 28, 2001 that he would have
reason to know that a claim for relief may have rested against the county.  The statute of
limitations likewise serves to bar this claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court hereby orders that the Defendants' Motion to
Dismiss Plaintiff's Amended Complaint, <u>see</u> (Dkt. # 10), is **GRANTED in PART and
DENIED in PART**.  The Court determines that the statute of limitations bars Plaintiff's
claims advanced pursuant to 42 U.S.C. § 1983 (the First, Second, and Sixth Claims for
Relief).  Said claim are hereby **DISMISSED WITH PREJUDICE**.  The Court declines to
exercise supplemental jurisdiction over the remaining state law claims.  Said claims are
**DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**

_/s/  Peter  C.  Economus_  - **August  16,  2006**
**PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**